UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOYOTA MOTOR SALES, U.S.A., INC., <br>     Plaintiff <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br>     Defendants | No. 24-cv-09401 <br><br> Judge Jeremy C. Daniel |

### ORDER

The complaint [1] is dismissed without prejudice for misjoinder. The plaintiff has fourteen days from the entry of this order to file an amended complaint naming an appropriate defendant or group of properly joined defendants. The plaintiff's motion for leave to file under seal [3] is granted. All other pending motions [13, 18] are denied as moot.

### STATEMENT

The plaintiff seeks to join 103 defendants in this infringement action. Concerned that joinder was not proper, the Court directed the plaintiff to file a supplemental memorandum addressing the propriety of joinder. Having considered the plaintiff's arguments, the Court finds that joinder is not proper and dismisses the complaint without prejudice.

Rule 20 allows a plaintiff to join multiple defendants in an action where (1) "any right to relief is asserted against [the defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *see also UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018). "[U]nder Rule 20, district courts have discretion, with 'considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes.'" *Cont'l Indem. Co. v. BII, Inc.*, 104 F.4th 630, 645 (7th Cir. 2024).

Here, the plaintiff makes several arguments for joinder. According to the plaintiff, joinder is proper because: (1) it allows the plaintiff to combat the unique problem of

offshore Internet-based counterfeiters who exploit the anonymity and mass reach afforded by the Internet; (2) the defendants all fit the same profile, working in a similar manner and during the same time period to sell counterfeit products as part of the same occurrence or series of occurrences; (3) district courts have broad discretion to evaluate joinder as the case progresses, so they should just allow joinder and adjust as needed; (4) some counterfeiters coordinate actions to evade detection and liability, so district courts should infer that all counterfeiters, including the defendants named here, coordinate actions to evade detection and liability; (5) some counterfeiters use the same wording in product descriptions, so district courts should infer that the use of the same wording means that all of the defendants are in league with each other; and (6) some Seller Aliases may have common ownership, so district courts should allow joinder because the plaintiff does not have access to the information necessary to show common ownership at this time. None of these arguments are persuasive.

The plaintiff repeatedly cites *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511 (N.D. Ill. 2020) in support of joinder. As a threshold matter, *Bose* is not binding precedent. Moreover, I disagree with the swarm analogy set forth in *Bose* as applied to cases such as this one. In *Bose*, the district court compared the seventeen alleged counterfeiters joined as defendants in that case to a BitTorrent swarm where large numbers of individuals used the internet to cause mass harm anonymously. *Bose Corp.*, 334 F.R.D. at 516. A swarm implies movement as a crowd.[1] In the BitTorrent context, "swarm" refers to a group of computers in a peer-to-peer network downloading the same torrent. In this way, the computers are connected in purpose. Sometimes that purpose was to share copyright-protected files. In such instances, the copyright holder faced a "swarm" of individuals seeking to harm it by illegally uploading and downloading its protected works.

That differs from the situation here, where the plaintiff faces a number of alleged counterfeiters who have no shared[2] purpose. The plaintiff claims that the defendants fit a particular profile: they use nondescript seller aliases; (2) operate in foreign jurisdictions with little or no credible information regarding their identity or physical address; and (3) show evidence of market coordination such as similar advertising, marketing strategies, and techniques to evade detection and liability. That does not link the defendants to the same transaction, occurrence, or series of transactions or occurrences.

---

[1] https://www.merriam-webster.com/dictionary/swarm (defining swarm as "to move or assemble in a crowd")(last visited November 15, 2024).

[2] I realize one could quibble over semantics here. To be clear, as used here, a shared purpose differs from a common purpose. If the plaintiff's allegations are true, all of the defendants have a common purpose—to exploit the plaintiff's intellectual property for their own gain. But that is not a shared purpose. One could argue that the Chicago Bears' purpose is to win the Super Bowl. The Green Bay Packers have the same objective. The two teams, and thirty others, have the same purpose. As competitors, however, they do not have a shared purpose. The shared purpose exists within the team where all of the players on that team work together to achieve the same purpose.

I went to a concert a few weeks ago. When I got off the train, a vendor was selling what I suspected to be counterfeit t-shirts bearing the performer's likeness. As I continued toward the venue, I encountered a second vendor selling some of the same t-shirt designs as the first vendor. As I crossed the venue's parking lot, a third counterfeiter offered some of the same t-shirt designs for sale as the first two. These three vendors had the same profile. They sold the same merchandise. They used the same tactics to try to get my attention. Two of them even offered similar deals ("two for $30"). One could even argue that they "swarmed" the concert venue that evening. But that does not establish a "logical relationship" between them. Had I purchased a t-shirt from all three, only to have each fall apart after the first wash, it would not establish a series of transactions or occurrences allowing me to join them in a single lawsuit. That is, unless I had some link connecting them. To further illustrate this point, assume I am a super fan and decided to follow the performer to Los Angeles, California, where I encountered similar vendors selling the same t-shirts as I approached the venue. Even if the t-shirts came from the same factory, and even if the unauthorized vendors employed the same hustle, I would have a hard time establishing a connection between a vendor in Chicago and a vendor in Los Angeles— even though they fit a particular profile.

To borrow from the "hub-and-spoke conspiracy" context, there needs to be a "rim" connecting the various defendants. *See, e.g., Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 842 (7th Cir. 2020)(describing a hub-and-spoke conspiracy). A rim would allow one to treat all of the transactions or occurrences as a series, or to hold defendants jointly and severally liable. Having similar profiles, however, says nothing about the relationship between the various transactions or occurrences that give rise to the plaintiff's claims and does not make defendants jointly and severally liable. As the plaintiff concedes, not every defendant is working with other defendants. That means that the transactions or occurrences are not linked.

In the BitTorrent swarm described in *Bose*, the rim that connected the individuals who used BitTorrent to either upload or download copyright-protected materials was plain. At some point, someone uploaded the copyrighted file for others to download, which led to a series of downloads, *i.e.* occurrences, traceable back to that original upload. That was part of the agreement in joining the network and choosing to either upload or download protected files. Every user knew that there were other users, understood what the other users intended to do, and then helped achieve the objectives of the torrent by making their own devices available for sharing files. Nothing like that exists here. There is no series of occurrences to trace back to a common hub or shared purpose.

And it's not enough to suggest that sometimes there are things that link some of the defendants together. The plaintiff's arguments that some counterfeiters coordinate actions to evade detection and liability, some counterfeiters use the same wording in

product descriptions, and some Seller Aliases may have common ownership does not establish that *these* defendants should be joined on the off chance that one of these situations apply. This lawsuit accuses the defendants of using the plaintiff's mark to sell counterfeit products. The amended complaint paints the defendants as opportunists who trade on others' work for profit. There is no reason to believe that such defendants would stop at copying the plaintiff's work. That is, there is no reason to believe that such defendants wouldn't copy each other's work too. It is not surprising that an alleged counterfeiter would adopt methods used successfully by other counterfeiters.

Contrary to the plaintiff's suggestion, the Court has no discretion to bypass the standards set forth in Rule 20. I will not exercise my discretion to allow joinder only to sever defendants later. The rule establishes the standard. The plaintiff must meet that standard. Once the plaintiff meets that standard, the Court may exercise its discretion and permit joinder. Because the plaintiff has not shown that "any right to relief is asserted against [the defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," the Court is not in a position to exercise its discretion.

If a plaintiff lacks sufficient information to properly establish joinder, it can file multiple cases and, should discovery support joinder, seek to consolidate those cases. Alternatively, a plaintiff may file a case against one plaintiff, obtain discovery, and then amend its complaint to add additional defendants that discovery establishes are properly joined. Contrary to the plaintiff's suggestion, litigation, as contemplated by the rules, cannot place an unreasonable burden on plaintiffs or the courts.

Further, any suggestion that overlooking the requirements of Rule 20 serves judicial economy fails. The Court must still review infringement contentions as to each defendant, whether the defendants are joined in one case or sued individually. Because the Court does the same work, this does not improve efficiency. Experience has shown that allowing dozens and even hundreds of defendants to be joined in one case undermines judicial economy. In addition to evaluating the plaintiff's evidence as to each defendant, the Court must keep track of each defendant's filings. While true that many defendants default in Schedule A cases, there are times when multiple defendants appear, seek different relief, require multiple hearings on varying motions, have different dates, and so on. This creates friction within the case that complicates the "managing and structuring civil litigation for fair and efficient resolution of complex disputes." In short, Schedule A cases can quickly become unwieldy. Therefore, even had the plaintiff satisfied Rule 20, I would not allow joinder because it would undermine the fair and efficient resolution of the case.

Date: November 18, 2024

JEREMY C. DANIEL
United States District Judge

4